IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION
_____

| | | |
|---|---|---|
| JERRY LEMONS, PRO SE, | § | |
| TDCJ-CID # 655319, | § | |
| Previous TDCJ-CID # 566205, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:09-CV-0102 |
| | § | |
| TEXAS DEPARTMENT OF CRIMINAL | § | |
| JUSTICE ID, | § | |
| WILLARD KIPER, | § | |
| SJIRLEY K. HARBOUR, and | § | |
| MIKE RICHARDSON, | § | |
| | § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION

Plaintiff JERRY LEMONS, acting *pro se* and while a prisoner confined in the Texas

Department of Criminal Justice, Correctional Institutions Division, has filed suit pursuant to

Title 42, United States Code, section 1983 complaining against the above-named defendants and

has been granted permission to proceed *in forma pauperis*.  Defendants filed their Answer July

2, 2009, asserting various defenses, including Eleventh Amendment Immunity, Qualified

Immunity, and Failure to Exhaust Administrative Remedies.

On September 2, 2009, an evidentiary hearing was held to consider the issues of Eleventh

Amendment Immunity, Qualified Immunity, and Failure to Exhaust Administrative Remedies.

Although this case was filed and the hearing was held before the Fifth Circuit decided *Dillon v.*

*Rogers*, 596 F.3d 260 (5th Cir. 2010), all necessary due process was provided by giving both

plaintiff and defendant notice that the hearing would be conducted on various issues, including,

specifically, Failure to Exhaust Administrative Remedies and Qualified Immunity.  Evidence

was taken from both sides and records were examined in determining relevant facts.  Argument was heard on the issues.

After hearing the evidence offered, and as set forth below, the Magistrate Judge concluded that, while Failure to Exhaust Administrative Remedies applied to some claims, defendants KIPER, HARBOUR, and RICHARDSON were entitled to Qualified Immunity on all of defendant's claims.  The Magistrate Judge further concluded Eleventh Amendment immunity applied to bar claims against defendant TEXAS DEPARTMENT OF CRIMINAL JUSTICE ID and against defendants KIPER, HARBOUR, and RICHARDSON in their official capacities.

Plaintiff's claims involve incidents which occurred on four dates, December 8, 2008, January 27, 2009, February 13, 2009, and March 20, 2009.

Plaintiff claims defendant TEXAS DEPARTMENT OF CRIMINAL JUSTICE ID is "involved" because "complaints were filed 1/27/09, 2/13/09 & 3/20/09 informing TDCJ administration [plaintiff's] constitutional rights were being violated" by defendants KIPER and HARBOUR, whom plaintiff accuses of disrupting the Islamic prayer service on January 16, 2009 and depriving plaintiff of worship service on February 13, 2009 and March 20, 2009.

Plaintiff alleges defendant RICHARDSON, the Food Service Manager, did not provide a special menu for an Islamic holy day on December 8, 2008.  Instead, plaintiff alleges he and his fellow Muslims received the same meal as was provided to the general population that day.

Plaintiff alleges defendant KIPER caused a disruption during the Islamic prayer service on January 16, 2009 by removing inmate Powell from the service.  Plaintiff alleges defendant KIPER later informed plaintiff and inmates D. Brown and Williams that they would not be allowed to participate in Islamic services because they had caused a disruption at the service on

February 6, 2009.

Plaintiff alleges defendant HARBOUR deprived him of his right to attend the Friday prayer service on March 20, 2009 when she motioned plaintiff and another inmate, both of whom were late, to go back to their cellblocks while they were waiting to get into the service.

Plaintiff claims all of the above acts violated his First Amendment right to practice his religion.

Plaintiff requests injunctive relief to stop the violations of his rights, restitution of his filing fee, and an award of $25,000.00 "for mental/physical exaggeratios [sic] by the defendants."

## THE LAW AND ANALYSIS

## Defendant TDCJ-CID and Defendants KIPER, HARBOUR and RICHARDSON in their Official Capacities

Actions brought pursuant to Title 42, United States Code, section 1983, are subject to the sovereign immunity bar of the Eleventh Amendment. *Richardson v. Southern University*, 118 F.3d 450, 453 (5th Cir. 1997). The Eleventh Amendment bars suit against a state or a state official unless the State has waived its sovereign immunity. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65-66, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989). This also applies to cases in which the state is the real party in interest. *Hander v. San Jacinto Junior College*, 519 F.2d 273, 278 (5th Cir. 1975). The eligibility of the Texas Department of Criminal Justice for Eleventh Amendment immunity is settled law in this circuit. *Harris v. Angelina County*, 31 F.3d 331, 338 n.7 (5th Cir. 1994); *see, Loya v. Texas Department of Corrections*, 878 F.2d 860, 861 (5th Cir. 1989). The Texas Department of Criminal Justice is not a "person" within the meaning of section 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65-66, 109 S.Ct. 2304,

2309, 105 L.Ed.2d 45 (1989).  Plaintiff's claims against the Texas Department of Criminal Justice are barred by sovereign immunity.

Further, to the extent plaintiff's claim for monetary relief is asserted against defendants KIPER, HARBOUR, and RICHARDSON in their official capacities, it is barred because a suit against an official in his or her official capacity is actually a suit against the state.  *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 361-62, 116 L.Ed.2d 301 (1991); *Sanders v. English*, 950 F.2d 1152, 1158 (5th Cir. 1992).

"Because [Eleventh Amendment] sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice."  *Warnock v. Pecos County, Texas,* 88 F.3d 341, 343 (5th Cir.1996).

**MONETARY RELIEF UNDER THE PLRA**

Plaintiff has requested an award of monetary relief of $25,000.00 "for mental/physical exaggeratios [sic] by the defendants."  The Prison Litigation Reform Act requires a physical injury before a prisoner can recover for psychological damages.  42 U.S.C. § 1997e(e) ("No federal civil action may be brought by a prisoner ... for mental or emotional injury suffered while in custody without a prior showing of physical injury.").  Section 1997e(e) turns on the relief sought.  *Geiger v. Jowers,* 404 F.3d 371, 375 (5th Cir.2005).  Plaintiff has alleged no physical injury to substantiate the physical part of his "mental/physical exaggeratios [sic]."  The monetary relief sought by plaintiff for mental pain and stress is not supported by a showing of physical injury and is clearly barred by section 1997e(e).  Therefore, with respect to this claim, plaintiff has failed to state a claim on which relief can be granted.

**RLUIPA**

Plaintiff did not plead the Religious Land Use and Institutionalized Persons Act.  To the extent plaintiff's claims should be examined under RLUIPA, whether or not RLUIPA creates an official capacity action for damages, such an action is barred by Texas' sovereign immunity, which is not waived by virtue of RLUIPA.  *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 331 (5th Cir. 2009), *aff'd*, *Sossamon v. Texas*, ___ U.S. ____, 131 S.Ct. 1651, 1658-59, 179 L.Ed.2d 700 (2011).  Moreover, although the issue was not reviewed by the Supreme Court, the Fifth Circuit has determined RLUIPA does not create a cause of action against the defendants in their individual capacities.  *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 331 (5th Cir. 2009).

Additionally, the fact that a single service is disrupted or missed does not create a substantial burden and any RLUIPA claim on that basis is without merit.  *Copeland v. Livingston*, 2009 WL 2461007 CA No. 9:08-CV-94 (E.D.Tex. Aug. 7, 2009).

**Defendant RICHARDSON in his Individual Capacity**

**Failure to Exhaust**

Based upon plaintiff's representation at the hearing that he had not exhausted administrative remedies on any claim against defendant RICHARDSON, and based on defendants' assertion of the defense of failure to exhaust administrative remedies, plaintiff's claims against defendant RICHARDSON are barred for failure to exhaust pursuant to Title 42, United States Code, section 1997e(a), and plaintiff has failed to state a claim against defendant RICHARDSON on which relief can be granted.

**Qualified Immunity**

Moreover, the evidence and argument presented at the September 2, 2009 evidentiary hearing demonstrates there was no dispute between the parties concerning the controlling facts. Based on those facts the Court finds defendant RICHARDSON is entitled to qualified immunity.

Qualified immunity is an affirmative defense which protects public officials from civil liability while performing discretionary functions when such acts or omissions were objectively reasonable in light of clearly established law. *Colston v. Barnhart*, 130 F.3d 96, 99 (5th Cir. 1997) *citing Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir.), *cert. denied*, 506 U.S. 973, 113 S.Ct. 462, 121 L.Ed.2d 371 (19892); *Siegert v. Gilley*, 500 U.S. 226, 233, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).

In analyzing a defendant's right to qualified immunity, the Court must determine whether the defendant violated a clearly established constitutional right[1]. If so, the Court must also determine whether the constitutional right was clearly established at the time of the incident; and, if so, whether the conduct of the defendant was objectively unreasonable in light of contemporaneous clearly-established law. *Hare v. City of Corinth*, 135 F.3d 320, 328 (1998). Although analysis under the first prong requires the court to consider currently applicable constitutional standards, analysis under the second prong requires a court to measure the objective reasonableness of an official's conduct with reference to the law as it existed at the time of the conduct in question. *Id.* (citing *Rankin v. Klevenhagen*, 5 F.3d 103, 108 (5th Cir. 1993).

In deciding which of the two prongs to address first, the court may utilize its sound

---

[1]A preliminary inquiry must be made whether the plaintiff has asserted a violation of any constitutional right at all. *Siegert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). Analysis at this stage is performed under the "currently applicable constitutional standards." *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993).

discretion in light of the circumstances in the particular case at hand.  *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

The evidence and testimony presented at the evidentiary hearing was that, on a Muslim holy day, Muslim inmates were allowed to hold a celebration together for two or three hours and eat as a separate group in the gymnasium instead of eating at the regular time with all other offenders in the chow hall.  Some of the Muslim inmates felt the menu for the meal was not appropriate and that more serving utensils should have been provided.  Some felt they should have received a special menu, *i.e.*, one with Islamic significance, similar to meals served on Thanksgiving, Christmas, or Halloween; others felt they should have been served chicken instead of the Mexican food which was provided.  Still other inmates felt plastic cups should not have been provided for use in serving the food and that regular serving utensils should have been made available.

The Court notes Thanksgiving and Halloween, as such, are not holy days in any religion and that Christmas, while it is a Christian holy day, is also a secular holiday in contemporary culture and is generally celebrated by both Christians and non-Christians alike.

In any event, uncontroverted testimony was presented that TDCJ policy requires the menu of a holy day meal to be the same as that served to general population, with the only difference allowed being the time and place of the meal.  The meal under consideration was served at 10:00 a.m., the normal time for the meal, but was served in the gymnasium, a special place.  Attendance was limited to members of the Muslim community.  The menu was Mexican food and serving utensils were provided, *i.e.*, large plastic perforated spoons, along with some plastic coffee cups with handles, intended to be used for serving.  While there were other serving

utensils that were not sent to the gymnasium, they were metal, not plastic like the ones that were provided.  Metal utensils present a security issue.  Defendant RICHARDSON testified he didn't want to sign out metal utensils because he didn't have sufficient staff at the gym to keep track of them.  He testified that if one or more metal utensils had gone missing, it would have resulted in security delays occasioned by searches and even lockdowns until all metal utensils were located.  RICHARDSON further testified the plastic cups provided for use in serving were also frequently used in the chow hall when there were not enough serving utensils there.

Plaintiff did not contest any of this testimony.

Based on the evidence at the evidentiary hearing, the Magistrate Judge concludes plaintiff did not allege facts showing a violation of any constitutional right by defendant RICHARDSON and, even if plaintiff had exhausted administrative remedies on his claim(s) against defendant RICHARDSON, defendant RICHARDSON is protected by qualified immunity from the claims asserted.

**Defendant HARBOUR in her Individual Capacity**

By his amended complaint, plaintiff alleged defendant HARBOUR violated his rights by denying him attendance at a March 20, 2009 Islamic service.  In light of defendant's assertion of the defense of qualified immunity and the evidence at the hearing on that issue, the Court determined defendant HARBOUR was entitled to qualified immunity.

At the evidentiary hearing, uncontroverted testimony was presented that defendant HARBOUR is assigned to the chapel in the education building and is in charge of security and safety.  She takes the rosters and sign in sheets and calls offenders out for religious services.  She conducts pat down searches of the offenders and searches whatever they bring with them,

including their Korans.  Defendant HARBOUR is also in charge of placing a tape recorder in the chapel for each Muslim service and checking it every 15 to 30 minutes to make sure it is still recording and hasn't been turned off.  Defendant HARBOUR does not chose which offenders may attend services and does not have the authority to tell defendant KIPER to remove any inmate from the lay-in list for religious attendance.

Defendant HARBOUR testified that, in March of 2009, she refused to admit plaintiff to one prayer service because he was over an hour late.  She said she did not have authority to suspend inmates from Jumah services but that she could send them home.  Defendant HARBOUR stated she calls inmates fifteen minutes before the service and then gives a last call. She said plaintiff was over an hour late the day she turned him away.

At the hearing, plaintiff conceded he was over 45 minutes late to the service.  Plaintiff testified that, on the day in question, he got off work and asked two guards whether HARBOUR had called the service.  Plaintiff said neither guard knew and he went to the chapel only to be turned away by defendant HARBOUR.  He said, after HARBOUR turned him away, he asked a Lt. Richardson if she could help and she called defendant HARBOUR.  Plaintiff said RICHARDSON told him HARBOUR said she had called the service over 40 minutes ago and that she wouldn't overrule HARBOUR.

The evidence shows plaintiff knew what time the service began and plaintiff did not present evidence showing it was impossible for him to arrive on time or that defendant HARBOUR knew of any such impediment.  Further, although plaintiff maintained the important part of the service had not yet started when he was turned away by HARBOUR, plaintiff presented no evidence that HARBOUR knew this.  In any event, defendants presented evidence

that inmates must be in the places to which they are assigned or have permission to be.  The Court notes a failure to enforce that requirement would have an obvious and deleterious effect on prison security.

Plaintiff's right of free exercise is subject to reasonable restrictions and limitations necessitated by penological goals.  *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995).  Courts defer to the policy decisions of prison regulators where limitations on religious liberties are reasonably related to legitimate penological interests.  *Baranowski v. Hart,* 486 F.3d 112, 120 (5th Cir.2007).  Plaintiff has presented no evidence showing the actions of defendant HARBOUR were objectively unreasonable in light of First Amendment law in 2009.  *Hare v. City of Corinth*, 135 F.3d 320, 328 (1998)(citing *Rankin v. Klevenhagen*, 5 F.3d 103, 108 (5th Cir. 1993)).  Plaintiff has failed to defeat defendant's entitlement to qualified immunity and defendant HARBOUR is entitled to be dismissed from the lawsuit.

**Defendant KIPER in his Individual Capacity**

By his amended complaint, plaintiff claims that, on January 16, 2009, defendant KIPER caused a disruption by removing an inmate POWELL from a service.  Plaintiff says the removal of inmate POWELL broke his concentration and interfered with his focus so he could no longer say his prayers, resulting, plaintiff says, in him getting up and leaving the service.

As to this incident, testimony was received from defendant KIPER that offender Powell was standing by the door in the chapel and that this created a security issue.  He stated offenders cannot stand by the door in that manner because they could alert others before KIPER or security staff could enter the room.  Further, they could obstruct the view of those outside of the chapel so they couldn't monitor what was going on inside.  KIPER stated offender Powell sat down

when KIPER first told him to, but when KIPER came by again, Powell was standing in the door again.  KIPER said he opened the door and again told Powell to sit down.  Powell responded that he had permission to stand, so KIPER had him come back out into the hall.  Powell did so and said he had written permission to stand there.  Defendant KIPER testified that, on numerous occasions the offenders and their coordinators had been instructed not to have persons posted at the doors.  Defendant KIPER said as he spoke with Powell, Powell became more agitated, and KIPER told him he needed to sit down or leave.  Defendant KIPER testified he then returned to his office and, when he came out again, Powell was standing in the door again and said Mr. Shipp had authorized him to be there.  By the time defendant KIPER got Mr. Shipp, Powell was sitting down.  Mr. Shipp said he had not given Powell any such permission and defendant KIPER then called Powell out and told him to bring his stuff because he would have to leave.  Defendant KIPER testified he then went back into his office and a few moments later, Mr. Shipp came in and said all the offenders had left.  Defendant KIPER said offender Powell did not grieve the incident and has not stood at the door since the incident.

The uncontroverted evidence presented at the evidentiary hearing, shows defendant KIPER acted reasonably in response to offender Powell's repeated disobedience of instructions and that the prohibition against standing in the doorway or guarding the doorway was reasonably related to a legitimate penological interest.  Moreover, the action of defendant KIPER in requiring offender Powell to sit, instead of standing in the doorway, did not interfere in any manner with the free exercise of religion by plaintiff LEMONS.  Defendant KIPER is entitled to qualified immunity for his actions.

Lastly, plaintiff claims, on or about February 24, defendant KIPER informed plaintiff and

inmates D. Brown and Williams that they would not be allowed to participate in Islamic services because they had caused a disruption at the service on February 6, 2009.

According to testimony from an inmate Brown, defendant KIPER was at work on February 6, 2009, when some offenders in the Muslim service (including Brown) tried to tell the inmate coordinator how they thought he should conduct the service. Inmate Brown said he and five or six others were telling the inmate coordinator what he was doing was wrong and what he should actually do when defendant HARBOUR came in and pulled the inmate coordinator out of the service. A response team arrived and went into the room. Inmate BROWN said defendant KIPER came into the room at some point and, when one offender spoke out while another offender was talking, KIPER said that if anyone spoke out again, he would put him out of the room or service.

Inmate Brown testified the service briefly became more orderly and then "got out of control" again. Testimony was received at the hearing from defendant KIPER, defendant HARBOUR, and Officer Shipp that the disturbances during the service were extremely loud and the disagreement between the two Muslim inmate groups was felt by defendant KIPER and security staff to present a danger to the security and safety of the offenders.

Defendant HARBOUR testified she heard a disruption and entered the chapel on February 6, 2009 during the argument between the two factions in the Muslim service. She stood at the podium waiting to see if they were going to quiet down. She testified the offenders at the east table and the offenders at the west table had squared off and were shouting at each other. She testified she found the tape recorder had been turned off and estimated it had been off for 15 to 30 minutes. She felt it had been turned off by an offender, since no one else was

there to turn it off.  Offenders are not allowed to turn off the tape recording, as all Muslim services are tape-recorded as a security measure because prison security officers do not attend the services.  When the offenders did not calm down, defendant HARBOUR  felt the situation was getting out of control and called Lt. Price, who arrived with a response team.

All parties appear to agree the disturbances during the meeting were both repeated and loud.  Although the response team was called, no disciplinary cases were given because prison authorities concluded it was just an argument over leadership.  No offenders were sent back to their cells.  All inmates were allowed to remain and complete the service.

Plaintiff's complaint is that, the week following that service, on or about February 13, 2009, he and other offenders who had been telling the inmate coordinator how he should conduct the service were called by defendant KIPER to his office and were informed they were not going to be allowed to attend the service the next day.  Defendant KIPER told them he had contacted the Islamic Chaplain for the area, Chaplain Talib, and told him of the disturbance.  He said Chaplain Talib recommended he suspend all Islamic services completely until Chaplain Talib could come to the unit to talk with the offenders; but defendant KIPER said he had decided, instead, to suspend plaintiff and the other inmates in the group involved in the disturbance from attendance until Chaplain Talib could come to the unit and resolve the problem.  Chaplain KIPER said it wasn't fair to other inmates to suspend services as to the offenders who were not causing a disturbance.

As a result, plaintiff and the other offenders KIPER felt were causing the disturbance were not able to attend the Jumah service the next day.  They were able, but chose not to attend services thereafter and did not return to Islamic services for 35 days.

During the evidentiary hearing, defendants addressed the February 6, 2009 incident and presented AD 07.30 which relates to security concerns during religious worship and states that the warden or his designee can discontinue a religious service, activity, meeting, or special observance that disturbs the orderly conditions of the unit[2] and that the warden or his designee can deny an inmate permission to attend religious activities if the offender's attendance could affect the safe and secure operation of the unit or the safety of an individual offender[3].

The uncontroverted evidence presented at the hearing shows there were two factions among the Muslim inmates at the February 6, 2009 meeting, those who supported the inmate coordinator (or at least didn't oppose him) and those (plaintiff's group) who opposed the coordinator and were unhappy that the previous coordinator had been replaced.

At the hearing, testimony was presented from both defendant KIPER and Islamic Chaplain Talib that the decision concerning what action to take was KIPER's to make, that Chaplain Talib had made a recommendation, but had later agreed with KIPER when KIPER said he felt it would be better to suspend attendance by those offenders who had caused the disturbance. Uncontroverted testimony was received from Rory Murphy, Chaplain Supervisor for Region V, and from Islamic Chaplain Talib as to the reasonableness of defendant KIPER's decision to suspend the inmates he felt were causing the disturbance and disrupting the Islamic service from attending further services (which was a single service) until Chaplain Talib could get to the unit to resolve the problem. Both witnesses testified KIPER's decision was reasonable and authorized under TDCJ-CID policy.

---

[2]AD 07.30 at page 6.

[3]AD 07.30 at page 7.

14

The uncontroverted evidence shows defendant KIPER acted reasonably and in a good faith.  Further, even if defendant KIPER erred on his decision, he is entitled to be protected by qualified immunity.

**CONCLUSION**

For the reasons set forth above, and pursuant to Title 42, United States Code, sections 1915A and 1915(e)(2), as well as Title 42, United States Code, section 1997e(c)(1), it is the RECOMMENDATION of the Magistrate Judge to the United States District Judge that the Civil Rights Claims by plaintiff JERRY LEMONS against defendant TEXAS DEPARTMENT OF CRIMINAL JUSTICE ID and against defendants KIPER, HARBOUR, and RICHARDSON IN THEIR OFFICIAL CAPACITIES be DISMISSED WITHOUT PREJUDICE PURSUANT TO Rule 12(b)(1), FEDERAL RULES OF CIVIL PROCEDURE AS BARRED BY SOVEREIGN IMMUNITY; plaintiff's claim for monetary relief be DISMISSED PURSUANT TO THE PLRA FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED AND AS FRIVOLOUS UNDER THE RLUIPA; plaintiff's First Amendment claims against defendants RICHARDSON be DISMISSED FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES; plaintiff's claims against defendant RICHARDSON and defendant HARBOUR be DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED and because defendants RICHARDSON and HARBOUR are entitled to qualified immunity against the claims asserted; and that plaintiff's claims against defendant KIPER be DISMISSED WITH PREJUDICE because KIPER has shown he is entitled to qualified immunity from plaintiff's claims.

<u>INSTRUCTIONS FOR SERVICE</u>

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this <u>17th</u> day of May, 2012.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).

4/09-0102

16